UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MICHAEL B. MONTGOMERY )
(Social Security No. XXX-XX-1959), )
 )
               Plaintiff, )
 )
     v. )          4:10-cv-83-RLY-WGH
 )
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
 )
               Defendant. )


**ENTRY ON JUDICIAL REVIEW**

**I. Background**

    Plaintiff, Michael B. Montgomery, seeks judicial review of the final decision of the Commissioner, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f). This court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

    Plaintiff applied for DIB and SSI on January 30, 2007, alleging disability since September 1, 2002. (R. 130-40). The agency denied Plaintiff's applications both initially and on reconsideration. (R. 91-108, 110-23). Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on March 31, 2009. (R. 316-370). Plaintiff

1

was represented by a non-attorney representative; also testifying was a vocational expert ("VE"). (R. 370). On May 13, 2009, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the economy. (R. 11-21). After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-4). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on August 2, 2010, seeking judicial review of the ALJ's decision.

Plaintiff was born in 1959 and has a high school education. (R. 19). His past work includes jobs in auto sales and as an office manager. (R. 367).

## II. Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was

"disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**III. The ALJ's Decision**

The ALJ's decision included the following findings: (1) Plaintiff met the insured status for DIB through June 30, 2007 (R. 13); (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (R. 13); (3) in accordance with 20 C.F.R. § 404.1520, Plaintiff had two impairments that are classified as severe: residuals of left leg injury and arthritis of the leg, back, hip, neck, and ankle (R. 14); (4) these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 15); (5) Plaintiff's allegations regarding the extent of his limitations were not fully credible (R. 17-19); (6) Plaintiff retained the RFC for light work with a sit/stand option; can occasionally balance, stoop, crouch, crawl, climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and is limited to routine, repetitive, unskilled work secondary to pain causing moderate difficulties maintaining concentration, persistence, and pace (R. 16); and (7) Plaintiff was unable to perform any past relevant work (R. 19); however, Plaintiff retained the RFC to perform a significant number of jobs in the regional economy (R. 19). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 20).

**IV. Issues**

The court has examined Plaintiff's brief and concludes that Plaintiff has essentially raised two issues.

1. Whether the ALJ improperly rejected Dr. Miller's opinions.

2. Whether Plaintiff's RFC accounted for his moderate limitations in

4

concentration, persistence, and pace.

**Issue 1: Whether the ALJ improperly rejected Dr. Miller's opinions.**

Plaintiff's first argument is that the ALJ erred when he declined to give greater weight to the opinions of Dr. Miller found in a form that Dr. Miller filled out in March 2009. Opinions of a treating physician are generally entitled to controlling weight. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001). Furthermore, 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> > (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> >
> > (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-

5

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their

> opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527.

Here, Dr. Miller opined that Plaintiff was so impaired that he could only stand for ten minutes and walk for five minutes in an eight-hour workday. (R. 247-52). The ALJ rejected Dr. Miller's opinions because there were inconsistencies on the form that Dr. Miller completed and because the ALJ determined that Dr. Miller had not examined Plaintiff. Plaintiff concedes that there were some inconsistencies in Dr. Miller's form, but argues that those inconsistencies are immaterial to a finding of disability. Plaintiff also argues that the ALJ erred because Dr. Miller did, in fact, examine Plaintiff. It is true that Dr. Miller's 2007 letter stated that he examined Plaintiff. But that letter did not provide any information on that examination. It did not include Dr. Miller's findings,

7

observations or conclusions. It did not contain any reported or observed symptoms. It did not provide a diagnosis or assess Plaintiff's ability to function, work or walk. The letter did not even note when or where the examination occurred. Sure, there is indication of an examination in the 2007 letter, but in view of the nearly two-year time period that elapsed between it and Dr. Miller's functional assessment, such examination proves little and the ALJ reasonably discounted Dr. Miller's assessment. Additionally, the fact that Dr. Miller's opinions are internally inconsistent is a permissible rationale for rejecting them pursuant to the Seventh Circuit's decision in *Dixon*.

Moreover, Dr. Miller's opinions appear to be worthy of rejection for two other reasons: they are inconsistent with other evidence in the record, and they appear to be based on Plaintiff's exaggerated reports. Dr. Akaydin provided examination results that do not support Dr. Miller's severe restrictions. (R. 227-32). Specifically, Dr. Akaydin found that Plaintiff did not need an assistive device to walk, had an essentially normal gait, and had a full range of motion in all joints. (R. 230-31). Finally, Dr. Miller found that Plaintiff was so impaired that he could not drive, care for his own personal hygiene, or even use public transportation. It is unclear what evidence in the record supports such extreme findings, so it stands to reason that these findings must have been based on Plaintiff's exaggerated complaints. In review, Dr. Miller's opinions lacked supportability, were internally inconsistent, were inconsistent with the findings of Dr. Akaydin, and appear to be based on Plaintiff's exaggerated complaints. The ALJ was free to reject Dr. Miller's opinions from March 2009, and his decision to do so is

8

supported by substantial evidence.

**Issue 2: Whether Plaintiff's RFC accounted for his moderate limitations in concentration, persistence, and pace.**

Plaintiff's second claim focuses on the ALJ's RFC assessment. The ALJ determined that Plaintiff was "limited to routine repetitive unskilled work *secondary to pain causing moderate difficulty maintaining concentration, persistence, and pace*." (R. 16)(emphasis added). The ALJ posed a hypothetical question to the VE that included a limitation to routine, repetitive, unskilled work, but did not mention the actual words "moderate difficulty maintaining concentration, persistence, and pace." Generally, a hypothetical question posed by an ALJ to the VE must include all of the limitations that are supported by medical evidence in the record. *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). Recently, the Seventh Circuit, in *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619-20 (7th Cir. 2010), explained that, in most cases, a hypothetical question that includes a term like routine, repetitive tasks does not account for moderate limitations in concentration, persistence, and pace. In *O'Connor-Spinner,* the Seventh Circuit noted that an ALJ does not have to use the magic words "concentration, persistence, and pace." *Id*. at 619. And, remand may not be necessary in certain circumstances such as: (1) where the record revealed that the VE had reviewed the claimant's medical records or heard testimony about the limitations; (2) where the ALJ used alternative phrasing and "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"; or (3) where the

9

ALJ's hypothetical question specifically mentioned the underlying condition that caused the difficulties with concentration, persistence, and pace. *Id*. at 619-20. "Yet, for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id*. at 620-21.

In this instance, the ALJ's failure to include a moderate difficulty in concentration, persistence, and pace in his hypothetical question to the VE requires remand. None of the exceptions to the general rule outlined in *O'Connor-Spinner* are present in this case. First, there is no evidence in the record that the VE reviewed all of Plaintiff's medical records or heard specific testimony about Plaintiff's limitations with concentration, persistence, and pace.[1] Second, a review of the administrative hearing reveals that the ALJ did not use any alternative phrasing that indicated a moderate limitation in concentration, persistence, and pace. Third, Plaintiff's underlying condition (severe pain) which led to a finding of a moderate limitation in concentration, persistence, and pace, was never mentioned in the ALJ's hypothetical to the VE. Furthermore, Plaintiff's counsel specifically asked the VE what effect a limitation in Plaintiff's ability to concentrate would have on Plaintiff's ability to work, and the VE testified that it could

---

[1] Even if there were evidence that the VE reviewed Plaintiff's medical records, that would not have been sufficient to cure the deficiency in the ALJ's hypothetical question because, like in *O'Connor-Spinner,* "the ALJ pose[d] a series of increasingly restrictive hypotheticals to the VE," and, "in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *O'Connor-Spinner,* 627 F.3d at 619.

have a significant impact depending on how severe a limitation was present. Given that the ALJ found a moderate limitation in Plaintiff's concentration, persistence, and pace, but failed to incorporate this limitation into his hypothetical question to the VE, we must remand this case in light of the Seventh Circuit's recent decision in *O'Connor-Spinner*.

**V. Conclusion**

The ALJ was not required to give controlling weight to Dr. Miller's opinions. However, the ALJ committed error when he failed to include a moderate limitation in concentration, persistence, and pace due to pain in his hypothetical question to the VE. The final decision of the Commissioner is, therefore, REMANDED. On remand, the ALJ is instructed to craft a hypothetical question to the VE that accounts for his finding of a moderate limitation in concentration, persistence, and pace due to pain.

**SO ORDERED** the 18th day of October 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com